Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan B. Gottschall | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 99 C 3063 | DATE | 2/2/2001 |
| CASE TITLE | Marcos Glinski vs. City of Chicago, et al. | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ■ Status hearing is set for March 1, 2001 at 9:30 A.M.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. The City of Chicago's Motion to Dismiss Counterclaim [23] is granted.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | number of notices | |
| | No notices required. | FEB 0 5 2001 | |
| | Notices mailed by judge's staff. | date docketed | 44 |
| ✓ | Notified counsel by telephone. | C.S. | |
| ✓ | Docketing to mail notices. | docketing deputy initials | |
| | Mail AO 450 form. | | |
| | Copy to judge/magistrate judge. | date mailed notice | |
| | courtroom deputy's initials | '01 FEB -2 PM 4:45 Date/time received in central Clerk's Office | mailing deputy initials |

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED
FEB 0 5 2001

MARCOS GLINSKI,

    Plaintiff,

v.

CITY OF CHICAGO, et al.,

    Defendants.

Case No. 99 C 3063

Honorable Judge Joan B. Gottschall

## MEMORANDUM OPINION AND ORDER

### Background

Plaintiff Marcos Glinski brought suit against Anthony Pacino, the City of Chicago, and other defendants irrelevant to this motion. Pacino is a police officer employed by the City of Chicago Police Department, and is sued both individually and as an agent of the City. Glinski's complaint includes, inter alia, claims against the City under 42 U.S.C. § 1983, as well as state law claims and § 1983 claims against defendant Anthony Pacino. All of the claims arise out of an incident that occurred on December 20, 1997. Glinski alleges that on that day he was visiting his daughter at the home of Anthony Pacino, per a visitation order of the Circuit Court of Cook County. Glinski alleges that at that time Pacino assaulted and battered him, and had him arrested without probable cause. Defendant Anthony Pacino has filed a cross-claim[1] against the City of Chicago seeking to force the City to defend him in Glinski's lawsuit and seeking indemnification for any judgment Glinski may obtain against him. The City has moved to dismiss the cross-

---

[1] Although Anthony Pacino's pleading filed on April 27, 2000 is entitled "Counterclaim," it is actually a cross-claim under Federal Rule of Civil Procedure 13, because it is a claim by one party against a co-party (not an opposing party) arising out of the transaction or occurrence that is the subject matter of the original action. See Fed.R.Civ.P. 13(g).

claim pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, the City's motion is granted.

## Analysis

The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide its merits. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). A court should dismiss a claim only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint." *Cook v. Winfrey*, 141 F.3d 322, 327 (7th Cir. 1998) (citations omitted). The court must accept all well-pleaded factual allegations in the light most favorable to the plaintiff. *Colfax Corp. v. Illinois State Toll Highway Auth.*, 79 F.3d 631, 632 (7th Cir. 1996).

In its motion to dismiss, the City argues that Pacino has no standing to bring the cross-claim because indemnification and the duty to defend are issues covered by the collective bargaining agreement ("CBA") between Pacino's union, the Fraternal Order of Police, Chicago Lodge No. 7, and the City. The City contends that the CBA governs Pacino's claims, and that Pacino cannot seek to enforce the agreement because, unlike the union, individual employees are not parties to the CBA. The City further contends that Pacino may bring an action to enforce the CBA only if he shows that the union breached its duty of fair representation, and that the Illinois Local Labor Relations Board has exclusive jurisdiction over such a claim. Finally, the City contends that Pacino's claim must be dismissed because he has not exhausted his administrative remedies, including the utilization of a three-step grievance procedure, as provided by the express terms of the CBA.

Pacino responds by pointing to two authorities independent of the CBA. First, Pacino

2

notes that an Illinois statute requires the City to indemnify a police officer for any liability arising from injuries caused by the officer "while the [officer] is engaged in the performance of his or her duties as a police officer," (with exceptions not applicable here) unless "the injury results from the wilful misconduct of the police officer." *See* 65 ILCS 5/1-4-5. Second, Pacino refers to the Municipal Code of the City of Chicago, which states that the corporation counsel of the City shall "[a]ppear and defend any member, officer or employee of the . . . police department . . . who is sued personally for damages claimed in consequence of any act or omission or neglect of his official duties or in consequence of any act under color of authority or in consequence of any alleged negligence while engaged in the performance of such duties." *See* City of Chicago Munic. Code § 2-60-020.[2]

The City argues that these two authorities are inapplicable because the express terms of the CBA govern the City's duties to indemnify and defend, and that issues of interpretation of the CBA must go through the three-step grievance procedure outlined in the CBA. The CBA provides, in relevant part:

> Section 22.1 - Employer Responsibility. The Employer shall be responsible for, hold officers harmless from and pay for damages or monies which may be adjudged, assessed, or otherwise levied against any officer covered by this Agreement, subject to the conditions set forth in Section 22.4.

---

[2] Pacino also asserts that he should be excused from the exhaustion requirement under the "futility" exception. *See Roman v. United States Postal Service*, 821 F.2d 382 (7th Cir. 1987) (exhaustion not required where resorting to grievance procedures would be wholly futile, as where the individuals that would pass on the claim are the same as the individuals charged with violating the employee's rights). Pacino has clearly failed to show that his claim falls within this exception. Pacino points to the fact that the City has made it clear to him that it will not defend or indemnify him in this action. But the fact that the City disagrees with Pacino about the extent of its duties to defend and indemnify him does not establish that submission of the claim to an independent group of arbitrators (step 3 in the grievance process of the CBA) would be futile.

3

> Section 22.2 - Legal Representation. Officers shall have legal representation by the Employer in any civil cause of action brought against an officer resulting from or arising out of the performance of duties.
>
> Section 22.4 - Applicability. The Employer will provide the protections set forth in Sections 22.1 and 22.2 above so long as the officer is acting within the scope of his employment and where the officer cooperates . . . in defense of the action or actions or claims.

(CBA §§ 22.1, 22.2, 22.4).

The question before the court, therefore, is whether the CBA exclusively governs these claims or whether Pacino can assert his claims against the City based on the statute and municipal code, independent of the CBA's terms. The City relies chiefly on *Roman v. United States Postal Service*, 821 F.2d 382 (7th Cir. 1987) and *Health Employees Labor Program of Metropolitan Chicago v. County of Cook*, 236 Ill.App.3d 93, 95 (Ill. App. Ct. 1992) for the proposition that the CBA governs Pacino's claims. In *Roman*, the Seventh Circuit was reviewing the district court's dismissal of a postal employee's claim for violation of due process arising out of an allegedly improper termination. The district court concluded that the employee had not exhausted his administrative remedies under the collective bargaining agreement between the Postal Service and his union. The Seventh Circuit affirmed the district court's decision because the employee was limited to contractual claims under the CBA.[3] The employee's argument that he was asserting independent due process rights failed because Congress had "expressly authorized the adoption of final and binding grievance provisions in the Postal Service collective bargaining agreements [in] 29 U.S.C. § 1206(a)." Because the specific agreement at issue

---

[3] Although the Seventh Circuit affirmed the district court's dismissal under Federal Rule 12(b)(6), it noted that the district court considered evidence beyond the pleadings, and therefore should have employed the summary judgment standards of Federal Rule 56.

4

provided for termination only for "just cause," the agreement controlled the employee's claims, and he was "limited to the due process protections provided in that agreement." *Roman*, 821 F.2d at 386. The court went on to note that the Labor-Management Relation Act, 29 U.S.C. § 185(a), applied to the postal worker's suit, and required the plaintiff to exhaust his contractual remedies before filing suit. *See Roman*, 821 F.2d at 386. Thus, the court concluded that the Postal Service was entitled to judgment as a matter of law because the plaintiff had not properly initiated the grievance procedures under the collective bargaining agreement, and affirmed.

The second case relied on by the City is *Health Employees*. In *Health Employees*, two employees were terminated and subsequently filed grievances pursuant to the collective bargaining agreement between their union and their employer, Cook County. The County refused to process and arbitrate their grievances. The union then filed suit to compel arbitration. The trial court dismissed the union's complaint, relying on the alternate procedures for civil service dismissals established by the civil service system in the County's code. The appellate court reversed, holding that in Cook County, a home rule unit of local government, the civil service system is optional upon the County and "cannot be held to prevail over the rights of public employees, who, . . . have become members of a collective-bargaining unit duly authorized by the employees and recognized by the employer." *See Health Employees*, 603 N.E.2d at 592 (alteration in original). Thus, the County had a duty to bargain with the union over the dismissal procedures, notwithstanding the civil service system's alternate procedures for dismissal. Therefore, the court reasoned, the County must necessarily have a duty to follow the provisions of the agreement established through that collective bargaining.

Neither *Roman* nor *Health Employees* controls the outcome in this case. In *Roman*, the

5

plaintiff sought to allege a violation of due process, despite Congress' express authorization of a grievance procedure. The court held that he was limited to the due process protections of the CBA. In contrast, Pacino is not asserting a due process violation relating to the grievance procedure itself. Rather, he is seeking to enforce substantive rights expressly granted to him by a separate state statute and the provisions of a municipal code. *Roman*, therefore, is inapposite.

The City's reliance on *Health Employees* is also misplaced. The *Health Employees* court simply extended the reasoning of two Illinois Supreme Court cases in which the question was whether a home rule local unit could avoid bargaining over issues where a local ordinance, rule, or system dealt with the same issue. *See American Federation of State, County & Municipal Employees v. County of Cook*, 584 N.E.2d 116 (Ill. 1991) ("*AFSCME*") (a County's attempt to require certain employees to take civil service examinations); *City of Decatur v. American Federation of State, County, & Municipal Employees, Local 268*, 522 N.E.2d 1219 (Ill. 1988) (a union's arbitration proposal). In those cases, the Illinois Supreme Court held that a home rule unit did have a duty to bargain over such issues, notwithstanding the local unit's code. *See AFSCME*, 584 N.E.2d at 482; *City of Decatur*, 522 N.E.2d at 1225. In reaching this conclusion, the court in *City of Decatur* employed an enlightening analogy: where a statute establishes a minimum wage for employees, the existence of that statute does not remove wages as a mandatory subject of bargaining. In that hypothetical case, the court stated, "wages would remain a mandatory subject of bargaining, and employees' bargaining representative would be free to insist on a level higher – *but not lower* – than that required by law." *City of Decatur*, 522 N.E.2d at 1224 (citations omitted) (emphasis added). *Health Employees* simply extended that logic to require a local unit to fulfill the higher obligations it undertakes in a collective

6

bargaining agreement entered into as a result of the bargaining required by *AFSCME* and *City of Decatur*, notwithstanding the lower level of protections ensured by the local unit's code. *Health Employees*, 603 N.E.2d at 592-93.[4] In other words, the *Health Employees* court merely held that a local unit could not refuse to extend the greater rights granted to its employees in a CBA by relying on the less protective provisions of its local civil service system. In contrast to *Health Employees*, the question here is not whether a civil service system provides the City with a defense to enforcement of the CBA. Rather, the question is whether the grievance procedures of the CBA must be exhausted before bringing a judicial action on the basis of a state or municipal statute that provides the same substantive protections as the CBA.

Although the authorities cited by the City fail to establish that the CBA exclusively governs Pacino's cross-claim, Pacino has offered no compelling support for his proposition that reliance on independent sources is permissible, despite the existence of the CBA.[5] Thus, the central question presented by this motion remains unanswered by either party's briefs. The court, therefore, must examine other relevant authority to resolve this motion. The court starts by looking to the Illinois Public Labor Relations Act, which governs the collective bargaining

---

[4] These cases establish only that a local unit might be obligated to bargain for and abide by a collective bargaining agreement granting *more* rights to its employees than its adopted civil service system provides. But there is no reason why a municipality should be able to disregard the "floor" of rights it has already granted to employees under the municipal code it has adopted, such as a minimum wage for public employees or a right to be defended by the City in certain actions.

[5] Aside from the Illinois statute and the City of Chicago's Municipal Code, Pacino cites only *Roman* in support of his contentions. As stated above, *Roman* is inapposite here because that case dealt with a constitutional due process challenge. Moreover, Pacino appears to rely on *Roman* only to establish the existence of the futility exception to the general rule that a plaintiff must exhaust his administrative remedies under the CBA before filing suit. As discussed in note 2, *supra*, Pacino clearly falls short of establishing that his case falls within this exception.

7

process for public employees. Section 15 of the IPLRA provides, in relevant part:

> (a) In case of any conflict between the provisions of this Act and any other law, executive order or administrative regulation relating to wages, hours and conditions of employment and employment relations, the provisions of this Act or any collective bargaining agreement negotiated thereunder shall prevail and control. . . .
>
> (b) . . . [A]ny collective bargaining contract between a public employer and a labor organization executed pursuant to this Act shall supersede any contrary statutes, charters, ordinances, rules or regulations relating to wages, hours and conditions of employment and employment relations adopted by the public employer or its agents. . . .

5 ILCS 315/15.

These provisions give precedence to the IPLRA or CBA only if there is any "conflict" between the IPLRA and the other state statute, or if the other statute is "contrary" to the CBA. *See Majeske v. City of Chicago*, No. 89 C 7262, 1998 WL 312016, at *4 (N.D. Ill. Jun. 4, 1998); *Brownlee v. City of Chicago*, 983 F. Supp. 776, 782 (N.D. Ill. 1997). Here, the state statute at issue, 65 ILCS 5/1-4-5, is not in substantive conflict with the terms of the CBA. The indemnification provision of the CBA requires the City to pay for damages assessed against an officer "so long as the officer is acting within the scope of his employment." (CBA §§ 22.2, 22.4). The statute similarly requires indemnification for damages resulting from injuries caused by an officer "while the member is engaged in the performance of his or her duties as a police officer." 65 ILCS 5/1-4-5. These two provisions can hardly be interpreted as "contrary" to each other. Likewise, the municipal ordinance's provisions are also similar to the corresponding sections of the CBA. *Compare* CBA §§ 22.2, 22.4 *to* City of Chicago Munic. Code § 2-60-020. Because the statute and the municipal code are not contrary to the CBA, the IPLRA does not

8

require that the CBA supercede those provisions.

Nonetheless, Illinois courts have held that a party may not assert claims based on a state or municipal statutory provision whose subject matter *overlaps* an applicable collective bargaining agreement. *See Brownlee*, 983 F. Supp. at 782 (citing *Quist v. Board of Trustees*, 629 N.E.2d 807, 810 (Ill. App. Ct. 1994) and *Bartoszewski v. Village of Fox Lake*, 647 N.E.2d 591, 597 (Ill. App. Ct. 1995)). In *Quist*, the Appellate Court held that the plaintiff, a non-tenured faculty member at a community college, was required to exhaust her administrative remedies under the CBA before seeking judicial remedies for her termination. The plaintiff argued that the claim against her employer was based on a state statute, independent of the CBA, which required that the board of the college provide non-tenured faculty members an evaluation procedure. The court rejected the plaintiff's argument, finding that the CBA provided a review procedure, and that the "gist of plaintiff's grievance and . . . her complaint is that the Board failed to conduct an annual review and discuss it with her pursuant to the collective bargaining agreement prior to reaching its decision not to reemploy her for the following year." *Quist*, 629 N.E.2d at 810. The court concluded that the subject matter of the complaint was subject to the grievance procedure of the collective bargaining agreement and that, by failing to exhaust that procedure, plaintiff's complaint could not stand, notwithstanding the alleged violation of an independent state statute. *See id.* In *Bartoszewski*, the court reached a similar conclusion with respect to an overlapping municipal ordinance. 647 N.E.2d at 597 (finding that the plaintiffs clearly waived any intent to rely on the municipal ordinance). The *Brownlee* court summarized the "governing principle" of *Quist* and *Bartoszewski* as follows: "[U]nion-member employees . . . cannot eschew CBA provisions in favor of other state-law sources that cover the same subject." *Brownlee*, 983 F.

Supp. at 782.

The rationale underlying this governing principle is that where the parties to a collective bargaining agreement expressly include terms granting the union-member employees rights that are equivalent to rights granted under a substantive state or municipal statute, and where the parties also include an alternative dispute resolution procedure, the parties clearly intend for any disputes concerning the subject of the statute to be resolved under the CBA's dispute resolution procedures. So long as the substantive rights granted under the CBA meet the "floor" of rights required by the statute, this intent should be given effect. Where, as in *Quist* and *Bartoszewski*, the rights granted under the CBA provide the employee with protection equivalent to or greater than the substantive rights ensured by the statute, any employees claiming a violation of those rights must exhaust the grievance procedures set forth in the CBA.

In this case, the CBA provides officers with rights that are substantially equivalent to those granted by the statutory language. Both the CBA and 65 ILCS 5/1-4-5 grant Pacino a right to indemnification by the City for liability arising out of his conduct as an officer. *Compare* CBA §§ 22.1, 22.4 *to* 65 ILCS 5/1-4-5. Similarly, the CBA and the Municipal Code both require the City to defend Pacino against claims arising from Pacino's actions as an officer. *Compare* CBA §§ 22.2, 22.4 *to* City of Chicago Munic. Code § 2-60-020. Although the language is slightly different, the crucial inquiry is the same under both the CBA and the statutes -- was Pacino acting "within the scope of his employment" or "in the performance of [his] duties" when he caused the injury alleged by Glinski, the plaintiff in the underlying suit? The substantive rights granted under the CBA are essentially identical to the rights granted under the Illinois statute and Chicago's Municipal Code. The CBA does not go below the statutory floor by

10

providing less protection than the statutes require. Thus, Pacino is obligated to assert any violation of those rights under the procedures agreed to by the parties to the CBA. This court, like the *Quist* and *Bartoszewski* courts, finds that plaintiff's allegations are subject to the grievance procedure of the CBA negotiated by the plaintiff's union. "By failing to pursue and exhaust that procedure, plaintiff's judicial complaint cannot stand notwithstanding the alleged statutory violation." *Quist*, 629 N.E.2d at 810.

**Conclusion**

For the foregoing reasons, the City of Chicago's motion to dismiss Pacino's cross-claim is granted.

ENTER:

JOAN B. GOTTSCHALL
United States District Judge

DATED: February 2, 2001